No. 30,929.

THE NATIONAL BANK OF AMERICA, of Salina, *Appellee*, v.
O. P. BARRITT, MAYME S. BARRITT et al., *Appellants*.

(18 P. 2d 552.)

Opinion filed January 28, 1933.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger* and *E. S. Hampton*, all of Salina, for the appellants.

*Z. C. Millikin*, of Salina, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the defendants and it involves the construction of a will. There is also a cross appeal which raises the question of the right of the owner of a life estate in real property to the eighteen-months period of redemption.

The defendant, O. P. Barritt, the owner of the life estate in an eighty-acre tract of land in Saline county, gave a quit-claim deed to the plaintiff bank to secure his indebtedness to the bank, and his wife signed the deed with him. The deed contained no warranties, and it described the land in the usual way. The deed was treated as a mortgage and was regularly foreclosed. The trial court ordered his life estate sold at sheriff's sale, and on confirmation of

such sale allowed him the right to redeem his interest in the land within eighteen months. This part of the judgment is not questioned by the defendant, but the right of redemption is the ground of the cross appeal of plaintiff.

The trial court also held that Mayme S. Barritt, the wife of O. P. Barritt, was the owner of an undivided one-half interest in the remainder of the estate after the life estate of her husband, and that by her signing the quit-claim deed with her husband she had conveyed to the plaintiff bank her interest in this land, and the court ordered such undivided half-interest to be sold at sheriff's sale for such indebtedness. It was sold, and from this part of the judgment all the defendants appeal.

The defendants, in addition to the husband and wife, consist of their three children, a sister of David C. Barritt and her husband and their children, and the children of five nieces of David C. Barritt. David C. Barritt was originally the owner of this land. He executed a will December 2, 1909, and died October 9, 1913. Oliver P. Barritt was his half-brother. At the time the will was executed Oliver had no children. The eldest child was born in 1913. The record does not show when he was married. The paragraph of the will to be construed is as follows:

"I give and devise to my half-brother Oliver P. Barritt, the north half of the northwest quarter of section six (6), township thirteen (13) south in range two (2) west of the sixth principal meridian, in Saline county, Kansas. To have and to hold the above-described property for his sole use and benefit for and during his natural life and after his death the residue of said property shall go to and be the property of his widow and children. Should he die without issue and leaving no wife surviving him, then the residue of said property shall go to and be the property of his sister Lulu A. Medcraft. To have and to hold the above-described property for her sole use and benefit for and during her natural life and after her death the residue of said property shall go to and be the property of her children, share and share alike. Should the said Lulu A. Medcraft die without issue then the residue of said property shall go to and be the property of the children of my five nieces, Nellie L. Dow, Florence M. Dow, Alice E. Dow, Edith W. Dow, and Davida C. Dow, share and share alike. That during the lifetime of the said Oliver P. Barritt and Lulu A. Medcraft, said property cannot be sold or mortgaged, and the buildings on said property must be kept in good repair."

The particular clause in question is, "and after his death the residue of said property shall go to and be the property of his widow and children." Appellee construes this clause by reading in it the word "wife" instead of "widow" as being synonymous therewith.

With the substitution of the word "wife" for "widow" there can be no question as to the will devising a vested remainder in the wife, effective at the death of the testator with the enjoyment of it being postponed until the death of her husband. Many authorities are cited as to the meaning of the phrase "after his death," and its being given the preferred construction relating to the postponement of the enjoyment of the estate rather than postponing the vesting thereof. We recognize that as the general rule; but we have difficulty in reaching that conclusion in this case in connection with the word "widow," which has an absolutely different meaning and application from the word "wife." A widow is "one who has lost her husband by death." She is not only a possibly different person than the wife, but the word necessarily emphasizes and supplements the phrase "after his death" because, of course, there can be no widow until after the death of the husband. We are never justified in ignoring a distinctive difference in words.

It is suggested the testator would naturally have in mind Mayme S. Barritt, the wife of the half-brother, if not at the time the will was written, certainly at the time of his death, when it took effect. There was a wife and possibly one child at the time of his death, but he was thinking of a situation at another time when help would be most needed, namely, after the death of the life tenant. He would be thinking, not necessarily of this wife and possibly one child, but of the widow and children. This construction is confirmed by the next sentence, when the testator provided for a contingency by saying, "Should he die without issue and leaving no wife surviving him." The wife that survived him would be his widow, and if, as suggested, the word wife should be used in the earlier sentence instead of widow, then we should put with the word wife the words the testator used in the next sentence, making it the "wife surviving him."

The case of *McLean v. Stanley*, 134 Kan. 234, 5 P. 2d. 839, is cited and urged as applicable to the situation here under consideration, but there was no ambiguity or uncertainty of devisee whatever in that case, and the general rule was followed giving preference to it being a vested instead of a contingent remainder.

The case of *Purl v. Purl*, 108 Kan. 673, 197 Pac. 185, is more nearly applicable to the case at bar. There it was held:

"The will of a testator who resided in Illinois gave land in Kansas to his son, 'to have during his life, and at his death it goes to his children, if he has

any living; if not, it goes to his brothers and sisters or their heirs.' *Held,* the remainder was contingent until death of the life tenant, whether the will be interpreted according to the law of Illinois or according to the law of Kansas." (Syl.)

In the opinion the rule that is being urged here is forcibly discussed as follows:

"One of those rules is that 'a remainder must be construed to be vested if possible.' While the mechanical method of interpreting wills prevailed, this rule was an obsession of some courts and text-writers who, therefore, gave it exaggerated importance. Some of the rules for the interpretation of wills and some of the terminology accompanying that subject are no more than inventions employed for the purpose of converting contingent into vested remainders. The correct doctrine is stated by the supreme court of Illinois in the recent case of *Smith v. Chester,* 272 Ill. 428:

" 'We are not unmindful of the rule that in cases of doubt or ambiguity in the language used in creating a remainder, a construction is favored that will make the remainder a vested one, but such rule must give way to the intention of the testatrix as expressed in the will.' " (p. 681.)

In the case of *Walker v. Row,* 132 Kan. 564, 296 Pac. 699, the following is a clause of a will and the construction placed thereon:

" 'I give, devise, and bequeath to my granddaughter, Mamie King, all of the southwest quarter of section thirty-three, township twenty-three, and range sixteen, in Pawnee county, Kansas, to have and to hold the same, for and during her natural life, to have all of the use and profits thereof, and at her death to be equally divided between her children.' "

"It is held that the plaintiff's grantor did not hold the fee; nor was she a tenant in tail, but only a life tenant; the remainder estate will be contingent until her death; and specific performance was properly denied." (Syl. ¶ 2.)

In the case of *Berthoud v. McCune,* 130 Kan. 634, 287 Pac. 904, it was said:

"The contingency of a life tenant leaving living issue to whom property would go is not determinable until the prescribed event stated in the will, namely, the death of the granddaughter." (Syl. ¶ 3.)

Counsel for appellee cites a number of cases from other states in support of his contention that this was a vested rather than a contingent remainder, two of which cases are very much in point in that they use the word "widow" which was construed by the appellate courts to mean the wife and to make a vested estate at the death of the testator. They are *Solms' Estate,* 253 Pa. St. 293, and *Beers v. Narramore,* 61 Conn. 13. In both cases there were additional references and phrases which supplemented the word "widow" and helped materially in reaching the conclusion that the present wife was the person intended. In the former cases is the expression "to

the widow of said son should she survive him." Any and every widow survives her husband, but the word "she" must refer to some definite person. In the latter case two helpful expressions occur in the will in connection with the use of the word "widow." They are, "Should his widow remarry, or die before distribution of 'said trust estate" and "after the death of ——— and the widow of my son Frank W. Beers or her remarriage." (p. 16.) We are not inclined to regard these rather specific cases as being strictly applicable to the language we are here attempting to-construe. And we conclude, that in the instant case the reference by the testator did not necessarily mean Mayme S. Barritt, nor did she take a vested remainder upon the death of the testator. The judgment, therefore, ordering an undivided one-half of the remainder of the estate sold as belonging to Mayme S. Barritt and the sale and confirmation thereof should be set aside.

Does an owner of a life estate have, under the Kansas statutes, a right of redemption from a sheriff's sale of his estate? R. S. 60-3439 begins as follows: "The defendant owner may redeem any real property sold under execution . . ." Subsequent sections give such right to creditors. R. S. 77-201 (clause 8) defines real property as follows:

"The word 'land' and the phrases 'real estate' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal."

"Generally, as an estate or interest, 'real property' or 'real estate' imports an estate of freehold, which is an estate of inheritance or for life. As an estate or interest, 'real property' or 'real estate' includes all freehold estates, whether corporeal or incorporeal, and whether in possession, reversion or remainder." (50 C. J. 747.) (See, also, 1 Thompson on Real Property, 816; 3 Kent's Commentaries, 14th ed., 621; and Tiedeman on Real Property, 3d ed., 2.)

"The right of redeeming from a mortgage belongs alike to the tenant for life and to the owner of the estate in remainder." (42 C. J. 363.)

"In general any one who has an interest in the land, and would be a loser by a foreclosure, is entitled to redeem, although the mortgage is in the form of an absolute deed. . . . If he is affected by the mortgage he may redeem. . . ." (2 Jones on Mortgages, 8th ed., 822.)

"A tenant for life, or a tenant in tail, may redeem. . . ." (2 Jones on Mortgages, 8th ed., 838.)

"A tenant for life, a tenant in tail or a remainderman may redeem." (19 R. C. L. 644.)

"The theory of the act relating to redemption is that the owner of a sub-

stantial interest, whether or not he is a defendant, may redeem from an execution or mortgage-foreclosure sale, and the like protection is also afforded to creditors' mortgagees, and other lienholders." (*Mercer v. McPherson,* 70 Kan. 617, 620, 79 Pac. 118.) (See, also, *Goodman v. Malcolm,* 5 Kan. App. 285, 48 Pac. 439.)

We have no hesitancy in holding, as did the trial court, that the owner of a life estate in land has a perfect right under our statute (R. S. 60-3439 *et seq.*) to redeem from a mortgage-foreclosure sale of his life estate.

The judgment is reversed and ordered set aside as to the undivided one-half interest in the remainder, and affirmed as to the right of redemption.

BURCH, J., not sitting.

THIELE, J., not participating.