No. 46,576

BILLY RAY PINE, *Appellant,* v. EARL L. PITTMAN, NORMA J. PITT-
MAN, CARL L. PITTMAN, CAROLYN L. PITTMAN, *Appellees.*

(506 P. 2d 1184)

Opinion filed March 3, 1973.

*Billy Ray Pine,* of Shawnee Mission, argued the cause and was on the brief
*pro se* for appellant.

*Louis A. Silks,* of Shawnee Mission, argued the cause and was on the brief
for appellees.

The opinion of the court was delivered by

FATZER, C. J.: This was an action in forcible detainer. (K. S. A.
1972 Supp. 61-2301 *et seq.*) At issue is the right to possession of the
premises located at 6408 Larson Lane, Shawnee, Kansas, during the
eighteen-month period of redemption resulting from the foreclosure
of a first mortgage on the property, owned by the Prudential Insur-
ance Company of America, a corporation.

Upon consideration of the admissions and stipulations of record; the evidence introduced by the appellees, and from documents marked as exhibits and submitted by the parties, the district court found and determined the defendants Carl L. Pittman and Carolyn L. Pittman, husband and wife, were entitled to the use and occupancy of the premises throughout the period of redemption, and that monthly payments of $100 theretofore made by them to the clerk of the district court during the pendency of the action, as hereafter detailed, should be returned to them. The plaintiff timely perfected this appeal.

A summary of the facts and relevant transactions leading up to the commencement of the action out of which this appeal arises, are summarized and quoted as follows:

On March 27, 1951, one Charles R. Pruitt and his wife Betty, the owners of the fee simple title of the property in question, executed their promissory note in the principal sum of $9,850 in favor of Mission State Bank, and also executed a first mortgage in favor of the bank to secure payment of the note. The mortgage was a Veterans Administration type mortgage and was assigned by the Bank to Prudential, and later foreclosed on January 21, 1970, as hereafter noted.

On October 8, 1953, the Pruitts conveyed the property by warranty deed to Lester P. Schick and his wife Harriette, as joint tenants. However, the conveyance to the Schicks was made expressly *subject* to Prudential's first mortgage with no agreement by the Schicks to assume or pay the same.

Some nine years later, and on October 26, 1962, the Schicks executed a contract for deed to the property in question to Earl L. and Norma J. Pittman, husband and wife (the first Pittmans), as purchasers. As a part of the purchase price of $10,500, the Pittmans agreed *to assume and pay* the Prudential first mortgage then in the principal amount of $6,587.73 by making payment of $67.85 each month commencing November 1, 1962, covering principal, interest and taxes, and in addition, to pay the Schicks $22 each succeeding month on the contract. The Schick deed was to be escrowed, and was to be delivered to the first Pittmans or their assigns, when the contract was paid. Among other things, the contract provided that upon default by the Pittmans of payments under the contract, their tenancy of the real estate should become a month to monh tenancy at the rate of $100 per month, at the option of the seller.

On February 27, 1968, the first Pittmans assigned all of their rights and obligations in the contract for deed to Carl L. Pittman, and Carolyn, his wife (the second Pittmans), who took possession of the property. Upon default by the second Pittsmans of the first mortgage payment due on April 1, 1969—after approximately seven years of payments by both Pittmans—Prudential brought suit for foreclosure against the Pruitts, the Schicks, and the Pittmans. The second Pittmans were substituted by both parties to the contract for deed as the equitable owners and presumably were bound to pay the mortgage and did assume and agree to pay the same. Payments by the first and second Pittmans during their occupancy reduced the first mortgage balance by $2,057.92, and there was due on the first mortgage at the time of foreclosure the sum of $4,648.96. Judgment was entered in the foreclosure action on January 21, 1970, for $4,648.96, foreclosing the interests of all defendants in the real estate, and adjudging that Prudential's lien was a first, valid and prior lien upon the premises. Although Shick (whose wife was then deceased) filed an answer *pro se* in the foreclosure action, *he did not seek affirmative relief by cross-claiming under the contract for deed against either the first or second Pittmans pursuant to* K. S. A. 60-213 (g) *to foreclose or forfeit the equitable rights they acquired under the contract.* The district court found that Shick abandoned all his rights and interest in the contract for deed in the foreclosure action.

Except for Shick's answer, which is not contained in the record, none of the defendants pleaded or appeared on January 21, 1970, and a default foreclosure judgment was entered. The district court made specific findings of fact as to the previous transactions affecting an interest in the property, and the journal entry provided, in pertinent part:

"It is further by the court,

"CONSIDERED, ORDERED, ADJUDGED AND DECREED, That the defendants Charles R. Pruitt and Betty Jean Pruitt, husband and wife; the defendant, Lester P. Schick; the defendants Earl L. Pittman and Norma J. Pittman, husband and wife; the defendants Carl L. Pittman and Carolyn L. Pittman, husband and wife, and each and all of them be and they *are hereby forever barred from any right, title, estate, equity or lien in and to said premises,* or any part thereof, after such sale, *except the right of redemption, as provided by law, which is hereby fixed by the court at eighteen* (18) *months from the date of Sheriff's Sale as herein ordered,* and the purchaser, after the expiration of said period of redemption, be put into possession of said premises by a Writ of Assistance, or other proper process of this court, and that upon the expiration of the period

of redemption herein found, the Sheriff of Johnson County, Kansas, or successor in office, make, execute and deliver to the purchaser at said Sheriff's Sale, or assigns, a good and sufficient deed for the premises hereinbefore described." (Emphasis supplied.)

No appeal was taken from that judgment, nor was it modified in any manner.

Following the judgment of foreclosure, and on February 16, 1970, Schick purportedly quitclaimed any interest he had in the property to one Isaac Pine (father of the appellant), *subject to the first mortgage and its foreclosure.* On March 12, 1970, Shick also assigned and transferred all his right, title and interest in and to the contract for deed to Isaac Pine for the sum of $350, and also assigned to Isaac Pine excess proceeds, if any, derived from the foreclosure sale of the property by Prudential.

On May 13, 1970, Isaac Pine and his wife transferred their interest in the property by deed and assignment of the contract for deed to the appellant, *subject to the first mortgage and its foreclosure.*

The first Pittmans occupied and possessed the premises continuously since 1962, and until they assigned the contract for deed to the second Pittmans on February 27, 1968. The second Pittmans occupied and possessed the premises from the latter date until the foreclosure judgment was rendered, and thereafter occupied and possessed the property until the right of redemption expired on September 13, 1971. Thus, the only question presented is who is entitled to the rents and profits from June 1, 1970—the date this action was filed—until September 13, 1971, the date redemption expired? The only defendants to be affected by the judgment are the second Pittmans, and they are hereafter referred to as the appellees.

On June 1, 1970, the appellant filed the forcible detainer action in the magistrate court of Johnson County, and alleged that the appellees defaulted on their payments under the contract for deed on October 1, 1969; that he notified them he intended to exercise his option under the contract for deed and thereafter treat them as tenants from month to month at a rental of $100 per month during the period of redemption; that he served written notice notifying them that their failure to pay the $100 rental for the month of June, 1970, terminated the tenancy for nonpayment of rent, and further that an action was about to be brought to recover possession of the property. The prayer was for immediate restitution of the premises, for judgment of $100 for rent, and his costs.

The appellees filed their answer and a counterclaim. In addition to a general denial, they alleged that in the foreclosure action the appellant's predecessor in title, Lester P. Schick, was forever barred from any right, title, estate, equity, or lien in or to the property in question prior to his quitclaim deed to appellant; that in the same action the appellees were granted the right of redemption for eighteen months, and, therefore, have an interest in said real estate paramount to that of appellant; that if appellant's predecessor in interest had any rights against the appellees by reason of the contract for deed, it was mandatory that he affirmatively assert such rights in the foreclosure action, and that the said predecessor in interest failed to assert such rights in such action, and as a result Schick abandoned all claims to the property in such proceeding, and thereafter had no interest whatsoever to convey to the appellant.

The counterclaim sought to recover punitive damages from appellant by reason of his false and malicious institution of the forcible detainer action against the appellees. That issue was not decided by the district court, and it is not here for appellate review. The appellees having raised the issue of their interest in the real estate, the cause was transferred to the district court for trial.

At a pretrial conference, the district court ordered the appellees to pay to the clerk of the district court the sum of $100 on August 15, 1970, and a like sum on the 15th day of each month until determination of the action. All money paid was to be held by the clerk for the benefit of the appellant in the event it was determined the appellees had no interest in the real estate, and that the appellant was entitled to either rentals or damages from the appellees. The court also ordered that if it was determined the appellant had no right of possession, or claim to rentals or profits accruing, all sums paid by the appellees should be returned to them.

Upon final determination of the action on February 23, 1971, the district court denied the appellant recovery and entered judgment that the appellees were entitled to the use and occupancy of the premises throughout the period of redemption and that all $100 monthly payments made to the clerk of the court be returned to them.

While the appellant made nine statements of points on appeal, it is clear from the discussion in his brief he has waived points two through nine, and has elected to stand on point one, that "[t]he decision of the trial court was contrary to the laws of the state of Kansas as set forth in K. S. A. 60-2414 and K. S. A. 60-2416." In

this connection, the appellant states, "[i]t is the plaintiff's contention that pursuant to K. S. A. 60-2414 that the defendant owner does have the exclusive right of redemption . . . ."

K. S. A. 60-2414 (since amended, K. S. A. 1972 Supp. 60-2414) reads in pertinent part:

"(a) *Right of redemption by defendant owner; junior lienholders.* Except as otherwise provided by law, the defendant owner may redeem any real property sold under execution, special execution, or order of sale, at the amount sold for, together with interest, costs and taxes, at any time within twelve (12) months from the day of sale, and within six (6) months thereafter for the amount paid by the then holder of the certificate of purchase together with interest costs and taxes to the date of redemption, and shall in the meantime be entitled to the possession of the property; but where the court or judge shall find that the lands and tenements have been abandoned, or are not occupied in good faith, the period of redemption for defendant owner shall be six (6) months from the date of sale . . . ."

"(1) *Holder of legal title.* The holder of the legal title at the time of issuance of execution or order of sale shall have the same right of redemption upon the same terms and conditions as the defendant in execution, and also shall be entitled to the possession of the property the same as the defendant in execution."

It should here be noted, that Pine, as successor in interest, stands in Schick's shoes. He can assert no greater interest in the property than that which was conveyed to him in the chain of title from Schick to Isaac Pine, and finally to him.

We are of the opinion this case can be disposed of by answering the following questions: (1) did the appellant have a right of redemption as a lien creditor having been assigned Schick's right under the contract for deed; (2) did the appellees have a right of redemption to the premises, and (3) as between the appellant and the appellees, who had the primary right of redemption so as to be entitled to possession of the premises during the eighteen months period of redemption.

Turning to the first question, the record clearly shows that prior to the foreclosure of the first mortgage, there were only two encumbrances on the property—Prudential's first mortgage and Schick's equitable rights under the contract for deed. The equitable rights of Prudential were asserted and were foreclosed. Schick's equitable rights were not. The district court had jurisdiction of all the parties and of the subject matter, and while Schick filed an answer *pro se*, he failed to affirmatively assert his right to foreclose or forfeit the appellees' rights under the contract for deed. Schick's failure to assert his rights in that proceeding constituted

a waiver of any rights he may have had as a lien creditor in the property, and under the circumstances, as a junior equitable mortgagee, his lien was waived and he had no right of redemption thereby. (See comment, Junior Lien Holders and Mortgage Foreclosures, 10 JBK 412, 413 [1942].) In *Federal Farm Mortgage Corp. v. Crane,* 153 Kan. 114, 109 P. 2d 82, it was held:

> "In a foreclosure proceeding the holder of a junior mortgage on the same land was joined as a defendant. The junior mortgagee entered a general appearance in such foreclosure action but filed no answer and asked for no affirmative relief. In the circumstances stated it is held that the lien of the junior mortgagee was waived and that he has no right of redemption under the statute."

With respect to the second question whether the appellees had a right of redemption of the premises, we answer in the affirmative. As indicated, the appellees were defendant owners in the foreclosure action as assignees to the contract for deed executed by the Schicks to the first Pittmans. As contract purchasers, the appellees were the equitable owners of the premises and had an interest therein which was substantial so as to secure to them the right of redemption as guaranteed by K. S. A. 60-2414 (*a*). Moreover, the journal entry of judgment in the foreclosure action expressly reserved the right of redemption to the appellees. That judgment was never appealed or challenged and any inquiry into its merits now would constitute an infringement of the well-recognized principle of *res judicata.* In *Mercer v. McPherson,* 70 Kan. 617, 79 Pac. 118, it was said:

> "It is contended, however, that the right to redeem is statutory; that none except those expressly named in the statute may avail themselves of its benefits, and that under our statute only an owner holding the legal title to the land may redeem. This claim is based mainly upon the following provisions of the act:
>
> " 'The holder of the legal title at the time of issuance of execution or order of sale shall have the same right of redemption upon the same terms and conditions as the defendant in execution, and also shall be entitled to the possession of the property the same as the defendant in execution as hereinbefore provided.' (Gen. Stat. 1901, § 1915.)
>
> "While the holder of the legal title is expressly mentioned in this section it is not provided that he shall have the exclusive right of redemption. That such was not the intention of the legislature is manifest from the language of the following section, which mentions the assigns of the defendant in execution or order of sale in a class distinct from the holders of the legal title and places them upon an equality of right with the holders of the legal title . . .
>
> ". . . The theory of the act relating to redemption is that the owner of a substantial interest, whether or not he is a defendant, may redeem from an

*execution or mortgage-foreclosure sale,* and the like protection is also afforded to creditors, mortgagees, and other lien-holders. *The owner of an interest, although he may have no formal conveyance, is more entitled to exercise the right than one holding a naked legal title. The interest and right held by McPherson were certainly paramount to those of Mercer, who took his deed with notice of McPherson's rights."* (l. c. 619, 620.) (Emphasis supplied.)

See, also, *National Bank of America v. Barritt,* 136 Kan. 870, 19 P. 2d 552.

Shick held a warranty deed to the property and was made a party defendant to the original foreclosure action, thus he secured the right of redemption to the premises as the record title holder pursuant to K. S. A. 60-2414 (*l*) and a defendant owner pursuant to K. S. A. 60-2414 (*a*). The appellant, as Schick's successor in interest, was also entitled to redeem the property as a defendant owner. It follows that the appellant enjoyed the statutory right of redemption either as the holder of legal title or as a defendant owner; however, *that right was not exclusive,* and it did not arise by virtue of the contract for deed to the Pittmans, or the unrecorded second mortgage referred to in that agreement.

With respect to the third question, this court is of the opinion that, as between the appellant and the appellees, the latter had the paramount right of redemption and were entitled to possession of the property throughout the eighteen-month redemption period. The first Pittmans, and later the appellees, had exclusive possession of, and exercised dominion over, the property for seven years—from November 1, 1962, the date the appellant's predecessor in interest expressly surrendered possession. The combined payments of the first Pittmans and the appellees reduced the principal of the first mortgage by $2,057.92, and accordingly increased their equitable ownership in the property by that amount, so as to sustain the district court's finding of their substantial interest in the property. (*Mercer v. McPherson,* supra.)

On the other hand, the appellant merely held the legal title to the premises for which his father paid only $350. The appellant was never in possession of the premises and now attempts to assert rights under the contract for deed by serving notice on the appellees that they were tenants at will and demanded rental payments of $100 per month. The appellant had no right of possession arising by virtue of the contract for deed—his status as a lien creditor having been barred by the original foreclosure. Finally, it should be noted the appellant's interest is inferior to that of the appellees—

they having *assumed* the mortgage held by Prudential—he having taken title *subject* to that mortgage.

Once the appellant's status as a lien creditor was barred by the foreclosure, all the equities are in support of a conclusion the appellees had the primary right of redemption and were entitled to the undisturbed possession of the premises during the eighteen-month period of redemption.

In conclusion, we note the appellant's conduct is analogous to that of an "equiteer" as defined in *American Home Life Ins. Co. v. Heide*, 199 Kan. 652, 656, 433 P. 2d 454.

The judgment of the district court is affirmed with directions to instruct the clerk of the district court to return to appellees all payments made by them pursuant to the pretrial order.

It is so ordered.