(109 P.3d 180)

No. 92,410

FIDELITY BANK, f/k/a FIDELITY SAVINGS ASSOCIATION OF KANSAS, FSB, *Plaintiff*, v. JAMES M. KING, *et al.*, *Defendants* and U.S. BANK, N.A., *Defendant/Appellant.*

RIVER CITY ENTERPRISES, L.L.C., *Appellee.*

Opinion filed April 1, 2005.

*Bradley S. Anderson*, of South & Associates, P.C., of Kansas City, Missouri, for the appellant U.S. Bank, N.A.

*Karl R. Swartz* and *Kelly S. Herzik*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for the appellee, River City Enterprises, LLC.

Before GREEN, P.J., PIERRON and CAPLINGER, J.J.

PIERRON, J.: This case involves sale proceeds remaining after a sheriff's sale and payment of a first mortgage judgment. U.S. Bank, N.A., (U.S. Bank) appeals the district court's decision to distribute the remaining proceeds to River City Enterprises, L.L.C., (River City) after payment of Fidelity Bank's first mortgage. U.S. Bank argues it should have received the proceeds as second mortgage holder instead of River City as holder of the owner's right of redemption. We affirm.

The facts of this case are undisputed. In 1997, James and Carolyn King assumed the debt and obligations for real estate located

in Wichita for which Fidelity Bank was the mortgage holder. The Kings executed a second mortgage on the property in August 2000 in the amount of $32,000, for which U.S. Bank was the mortgage holder. Fidelity Bank petitioned for foreclosure of the Kings' property after they defaulted and failed to comply with the terms of the note and mortgage. U.S. Bank was a named defendant in the foreclosure action and was served with a summons and petition. U.S. Bank failed to answer or otherwise plead in the action.

The district court entered judgment in favor of Fidelity Bank on December 23, 2003, and foreclosed its first mortgage on the property. The journal entry ordered a sheriff's sale of the property and granted Fidelity Bank payment of the costs of the action and sale, payment of all taxes, and payment of Fidelity Bank's judgment with interest, and ordered that any remaining balance be held by the court subject to further order. The journal entry did not recognize any interest in U.S. Bank and stated that all defendants were thereafter barred from claiming any title, interest, estate in, lien upon, or claim against the real estate.

On January 28, 2004, the Sheriff of Sedgwick County sold the Wichita real estate to U.S. Bank for $93,500, and the sale was confirmed by the district court. The court paid Fidelity Bank $73,092.71 in full satisfaction of its judgment, and the remaining proceeds of $20,407.29 were held by the court. On February 25, 2004, River City filed a motion for distribution of sale proceeds. River City had acquired all right, title, and interest of the Kings prior to the sheriff's sale. The district court granted River City's motion that same day but temporarily halted disbursement of the proceedings due to U.S. Bank's subsequent actions.

On March 5, 2004, U.S. Bank filed a motion to deny River City's request for sale proceeds and a motion that the excess sale proceeds be paid to U.S. Bank. The district court denied the motion after a hearing. The district court held that by failing to respond to the petition and assert its lien rights in the property, U.S. Bank waived its redemption rights as a junior lienholder, had no further rights in and to the subject property, including redemption rights, and had no claim to the excess sale proceeds. U.S. Bank appeals.

U.S. Bank argues the trial court erred in holding River City was entitled to the surplus proceeds from the foreclosure sale of the Kings' property.

The district court made findings of facts and conclusions of law in awarding the excess proceeds to River City. The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. See *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

Resolution of the present issue begins with discussion of a factually similar case, *Federal Farm Mortgage Corp. v. Crane*, 153 Kan. 114, 109 P.2d 82 (1941). In *Crane,* the junior mortgage holder was joined as a defendant in the foreclosure action of the first mortgage. The junior mortgage holder entered a general appearance but filed no pleadings and asked for no affirmative relief. The first mortgage holder purchased the property at the sheriff's sale and then the junior mortgage holder attempted to redeem the property. The *Crane* court rejected the redemption, stating in the opinion syllabus:

"In a foreclosure proceeding, the holder of a junior mortgage on the same land was joined as a defendant. The junior mortgagee entered a general appearance in such foreclosure action but filed no answer and asked for no affirmative relief. In the circumstances stated it is held that the lien of the junior mortgagee was waived and that it has no right of redemption under the statute." 153 Kan. at 114, Syl.

The difference in *Crane* and the present case is that U.S. Bank did not even enter an appearance in the foreclosure action. The *Crane* court commented on the junior mortgage holder's apathy:

"It [junior mortgage holder] had an opportunity to assert any rights or claims it might have - it was joined as a party for that purpose. An orderly administration of justice requires that the owner of an interest shall have a day in court before a claim affecting his interest effectively secures judicial sanction. But an efficient administration of justice also requires that the presentation and final adjudication of controversies shall not be postponed indefinitely." 153 Kan. at 116-17.

*Crane* is indicative of the longstanding principle in Kansas that a mortgage foreclosure merges all liens into the foreclosure decree and extinguishes all liens on the land. See *Alliance Mortgage Company v. Pastine*, 33 Kan. App. 2d 442, Syl. ¶ 8, 104 P.3d 405 (2005) ("In a mortgage foreclosure action, a junior mortgagee that fails to foreclose its mortgage waives its lien and redemption rights."); *Price v. Bank*, 62 Kan. 735, 64 Pac. 637 (1901); *In re Application of SBA for Ad Valorem Tax Exemption*, 14 Kan. App. 2d 600, 797 P.2d 879 (1990); see Restatement (Third) of Property: Mortgages § 7.1 ("A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law.").

In *Federal Land Bank v. Shoemaker*, 155 Kan. 501, 126 P.2d 205 (1942), and *Pine v. Pittman*, 211 Kan. 380, 506 P.2d 1184 (1973), the junior mortgagee was made a party to a foreclosure action and filed an answer but failed to seek foreclosure on its lien. In *Shoemaker*, the junior mortgagee admitted in its answer the priority and existence of the first mortgage lien and also filed a cross-petition in which it set out its note and second mortgage. In its cross-petition, the junior mortgagee asked for a personal judgment against the original mortgagors, for an adjudication and decree of its lien on the property subject only to the first mortgagee's lien, and for redemption rights as a junior lienholder in the event of a foreclosure sale. The junior mortgagee, however, did not seek foreclosure of its mortgage. In *Shoemaker*, our Supreme Court held that a junior mortgagee who failed to foreclose its mortgage waived its lien and any right of redemption. 155 Kan. at 502-04. Similarly, in *Pittman*, our Supreme Court held that a junior equitable mortgagee who failed to assert his right to foreclose or forfeit the purchasers' rights waived his lien and had no right to redemption. 211 Kan. at 385-86.

*Crane, Shoemaker,* and *Pine* are not dispositive, but are instructive, of the issue in this case because they involve redemption rights and not the priority as to excess proceeds following payment to the first mortgage holder. U.S. Bank argues that proceeds "should always go to the person to whom in law and equity it more properly

belongs." *Butler v. Craig*, 29 Kan. 205, 207 (1883). U.S. Bank argues *Crane* and the other cases cited by the trial court are correct with regard to redemption rights but not with regard to surplus proceeds from the sale of the property. U.S. Bank argues the trial court incorrectly lumped the right to the surplus of the foreclosure sale with the right of redemption.

With *Crane* as a backdrop, the next question concerns U.S. Bank's status following the foreclosure of the mortgage. Failing to adjudicate its lien in the foreclosure action after being properly informed of the foreclosure, U.S. Bank is simply an unsecured creditor, not a lienholder. U.S. Bank argues Kansas law supports a finding that U.S. Bank, as junior lienholder, should recover surplus proceeds from the foreclosure sale. U.S. Bank repeatedly refers to itself as a "foreclosed junior mortgage holder." We find this characterization to be misleading. U.S. Bank does not have a foreclosed junior mortgage. U.S. Bank had a lien that was not recognized by the trial court, and as a consequence of the foreclosure action where it failed to participate, U.S. Bank now simply holds a note that has not been reduced to judgment.

In the context of this "foreclosed junior mortgage" terminology, U.S. Bank cites *Kinsley State Bank v. Waters*, 18 Kan. App. 2d 413, 854 P.2d 311 (1993), where Iuka Cooperative Exchange (Iuka) was a party to the foreclosure action of the mortgage holder by virtue of Iuka's notice of lis pendens filed in the same county as the foreclosure action, involving a suit in a different county against Waters, the owner. Iuka obtained judgment in the other county against Waters, and the judgment related back to a date well prior to the sheriff's sale. Regarding Iuka's status, the court stated:

"Waters owned the real estate at all relevant times and, pursuant to K.S.A. 60-2203a, appellant [Iuka] had a valid judgment lien which attached to the real estate well before it was sold. As a holder of a junior lien cut off by the foreclosure of a mortgage against the real estate, appellant was entitled to seek satisfaction of its claim out of the surplus proceeds from the foreclosure sale. 59 C.J.S., Mortgages § 800." 18 Kan. App. 2d at 417.

The court's dilemma in *Waters* was determining the priority in distributing the proceeds to Iuka or to Peoples Bank of Pratt (Peoples), who held a security interest in Waters' accounts receivable.

There was no evidence set forth by Peoples that it had a valid judgment lien. The trial court awarded the proceeds to Peoples, finding that Iuka did not have a perfected lien and Peoples had a security interest in the accounts receivable. The *Waters* court reversed, finding that Iuka had a valid judgment lien due to relation back of its judgment and ordered the trial court to determine whether Peoples had a valid judgment lien and whether Iuka or Peoples had priority to the proceeds. 18 Kan. App. 2d at 418.

Both parties discuss Restatement (Third) of Property: Mortgages § 7.4 (1996), and the related comment b:

"§ 7.4 Effect of Priority on the Disposition of Foreclosure Surplus.

"When the foreclosure sale price exceeds the amount of the mortgage obligation, the surplus is applied to liens and other interests terminated by the foreclosure in order of their priority and the remaining balance, if any, is distributed to the holder of the equity of redemption.

. . . .

"b. *Foreclosed junior interests entitled to surplus in order of their pre-foreclosure priority.* From the principle articulated in Comment a [surplus stands in the place of the foreclosed real estate], two important corollaries flow. First, the liens and other interests terminated by the foreclosure attach to the surplus in order of the priority they enjoyed prior to the foreclosure. Payment of the surplus will be governed by that priority. Moreover, foreclosed junior lienors are entitled to surplus even though their liens are not in default at the time of foreclosure. . . . Second, the claim of the holder of the foreclosed equity of redemption to the surplus is subordinate to the claims of all other holders of liens and interests terminated by the foreclosure."

U.S. Bank cites two cases where the junior mortgage holders were named in the foreclosure action, did not appear, and the district court held that they could not then assert a claim against the surplus proceeds. See *Kankakee Fed. S. & L., Assoc., v. Mueller*, 134 Ill. App. 3d 943, 481 N.E.2d 332 (1985); *Cowan v. Stoker*, 100 Utah 377, 115 P.2d 153 (1941). In both cases, the appellate court considered challenges by the original debtors against junior mortgage holders, and both cases held the junior mortgage holder had priority as to the surplus. 134 Ill. App. 3d at 946; 100 Utah at 383-84. River City points out the reluctance with which the court in *Kankakee Federal Savings* entered its decision:

"While there is no question that the preferred and better procedure would be for those persons asserting liens against the property, who wish to preserve their

liens, to assert them by way of answer in the original foreclosure proceedings, nevertheless, a foreclosure action is one in equity. In the instate case, where there is no dispute as to the lien of Municipal Trust, which was admitted by way of answer by the Muellers, and where the court clearly contemplated distribution of surplus proceeds, in a manner to be determined by it after the sale, in the original judgment order, we find no error in the court's determination, upon subsequent proof of a remaining balance on the junior mortgage, in ordering distribution of the surplus proceeds to Municipal Trust.

"This decision is applicable specifically to the factual situation in this case. We do not condone the failure of Municipal Trust to appear and file an answer to the complaint or otherwise enter its appearance in these proceedings prior to the report of sale. Foreclosure is an equity proceeding and it is foreseeable for a junior lien holder, such as Municipal Trust, to lose its lien priority to another more junior lienor where the latter has been diligent and not slept on its rights." 134 Ill. App. 3d at 946.

*Kankakee Federal Savings* and *Cowan* are distinguishable for one very important reason: "We see no reason in law or equity why appellant is not entitled to satisfaction from the proceeds from that land as against *mortgagor*." (Emphasis added.) 100 Utah at 383. In the present case, we are not faced with a situation involving the original mortgagor. River City has all the rights inherent in the property but none of the Kings' debt. U.S. Bank is limited to a note against the Kings without any claim against River City. *Kankakee Federal Savings* and *Cowan* present a situation where the Kings, hypothetically, attempted to obtain the surplus proceeds as against U.S. Bank. We save for another day a decision on whether a financing entity in U.S. Bank's position would have priority to surplus proceeds against the original mortgagor.

U.S. Bank contends the trial court's decision contradicts the Restatement. It maintains that surplus proceeds are applied to liens terminated by foreclosure before the holder of a right to redeem, with no exception being made for lienholders that do not plead. We disagree. The Restatement addresses the foreclosure interests "in order of [their] priority." Restatement (Third) of Property: Mortgages § 7.4, comment b. This finding in no way eliminates the Kings' debt to U.S. Bank, but it eliminates the secured nature in which U.S. Bank originally held the debt.

U.S. Bank contends equity leans in its favor as well. U.S. Bank explains that junior mortgage holders often choose to protect their

interest by bidding at the foreclosure sale in order to make sure the property brings a price sufficient to satisfy the junior lien in case the property is subsequently redeemed. Otherwise, the holder of the redemption right might be able to redeem for an amount exclusive of junior liens. U.S. Bank argues that if River City receives the surplus, U.S. Bank's debt remains unsatisfied, the Kings remain owing on the debt, and River City, a stranger to the original note and mortgage, gets away with the Kings' equity and U.S. Bank's additional funds it paid to protect itself at the sheriff's sale.

U.S. Bank also argues that not allowing recovery of surplus proceeds by a foreclosed second mortgage holder over the holder of the equity of redemption will result in the chilling of bids at Kansas foreclosure sales and of lending to property owners for second mortgages. U.S. Bank asserts that if it is forced to appear in every foreclosure action, "[g]reat expense would be incurred by junior lienholders, who would, to avoid excessive legal expenses, be required to spend excessive time and money specifically finding the value of foreclosed real property, determining whether it is financially prudent to answer foreclosure petitions, and then considering bidding at a foreclosure sale."

We are not persuaded by U.S. Bank's claims of equity. First and foremost, U.S. Bank is the owner of the Kings' property by virtue of its high bid at the sheriff's sale and theoretically can recoup any amount paid through subsequent sale of the property. Second, U.S. Bank has an enforceable note for approximately $30,000 due from the Kings. U.S. Bank can reduce the note to judgment and pursue collections remedies against the Kings. In its reply brief, U.S. Bank argues that River City is awarded a windfall by receiving the surplus proceeds. How River City came into ownership of the Kings' property rights and for what purchase price is irrelevant for our determination. River City purchased all the incidents of ownership, including the right to redemption and the right to any surplus proceeds after payment of the foreclosed interest. The Kings apparently benefitted from the exchange.

Third, we doubt our decision will have a chilling effect on bids at sheriff's sales and on the ability of individuals to obtain a second mortgage loan. The consequence we foresee will be an enforce-

ment of the understanding that in order to protect a junior lien, a financial institution must appear in the foreclosure action brought by the senior mortgage holder, assert the junior lienholder's position, have the court adjudicate the junior lien, and then make sure the junior lien is recognized in the journal entry of foreclosure.

We agree with River City that a junior lienholder who has responded in a foreclosure action, and whose lien is adjudicated by the trial court, has three rights: (1) the right to offset bid its judgment at sheriff's sale to protect the value of its lien; (2) the right to redeem the property from sale should the owner fail to redeem during the exclusive period found in K.S.A. 60-2414(b); and (3) the right to share in surplus proceeds after payment of the senior mortgage judgment. U.S. Bank's failure to participate in the foreclosure proceedings results in its position of being a holder of a $30,000 note not now secured by the property. In this factually specific situation, both in law and equity, River City as holder of the owner's right of redemption and right to excess proceeds as stated in Restatement (Third) of Property: Mortgages § 7.4 (1996), is entitled to the surplus proceeds as compared to U.S. Bank and its note against the Kings.

Affirmed.