No. 92,410

FIDELITY BANK, F/K/A FIDELITY SAVINGS ASSOCIATION OF KANSAS, FSB, *Plaintiff*, v. JAMES M. KING, *et al.*, *Defendants* and U.S. BANK, N.A., *Defendant/Appellant.* RIVER CITY ENTERPRISES, L.L.C., *Appellee.*

(136 P.3d 465)

Opinion filed June 16, 2006.

*Bradley S. Anderson,* of South & Associates, P.C., of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*Karl R. Swartz,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: This foreclosure appeal requires us to determine whether a junior mortgage holder waives its claim to excess sheriff's sale proceeds if it fails to appear and assert its position in a senior mortgage holder's action. We hold that it does.

Defendants James and Carolyn King assumed the debt on certain real property in Wichita in 1997. Fidelity Bank, f/k/a Fidelity

Savings Associations of Kansas, FSB (Fidelity), was the mortgage holder. In 2000, the Kings executed a second mortgage on the property with U.S. Bank, N.A. (U.S. Bank), for $32,000. The Kings defaulted, and Fidelity sued to foreclose its mortgage on the property  In its petition, Fidelity named the Kings as defendants, as well as U.S. Bank and Commercial Federal Bank, which held a judgment against the Kings. The defendants were properly served. Commercial Federal Bank filed a notice disclaiming any interest. U.S. Bank did not appear or file an answer or otherwise participate in the foreclosure.

The district court entered a decree of foreclosure, ruling that Fidelity held a first and prior lien upon the property. It entered judgment in favor of Fidelity and against the Kings for $65,321.25 plus interest, costs, taxes, and fees. The district court did not recognize any interest in any other party and stated that the defendants and all persons claiming by, through, or under Fidelity would be forever barred and excluded from asserting any title, interest, estate in, lien upon, or claim against the property. The court set a redemption period of 3 months from the date of the sale and ordered that proceeds derived from the sale would be applied: (1) to pay costs of the action and sale; (2) to pay real estate and special assessment taxes; and (3) to pay Fidelity's judgment, including interest. The court ordered "[t]he balance, if any, to be held by the Clerk of the Court, subject to further order of the Court."

The sale was held on January 28, 2004. U.S. Bank was the high bidder at the sale, purchasing the property for $93,500. The district court confirmed the sale on February 13, 2004, and paid Fidelity $73,092.71 in full satisfaction of its judgment. The clerk of the court held the remaining proceeds of $20,407.29.

On February 25, 2004, River City Enterprises, LLC (RCE), filed a motion in the district court, seeking distribution of the excess sale proceeds. RCE had acquired all of the rights and interest of the Kings just before the sale. Standing in the Kings' shoes, RCE moved the court to distribute the $20,407.29 held by the clerk to RCE.

The next day, the court granted the motion and ordered that the excess proceeds be distributed to RCE as the owner of all the

Kings' rights and interest in the property. The court noted that no notice was necessary; Fidelity was the only party that had appeared in the foreclosure action and its judgment had been paid in full.

On March 5, 2004, U.S. Bank filed a motion requesting that the court set aside its February order, deny RCE's motion, and instead distribute the excess proceeds to U.S. Bank. U.S. Bank alleged that it was still owed $29,680.67 on its mortgage on the property, that it had an interest superior to RCE's because of its status as a junior lienholder, and that it was entitled to receive the surplus proceeds from the sale in satisfaction of its lien. RCE filed a response, arguing U.S. Bank had lost any interest it had in the property, including any right to recover surplus proceeds, when it failed to adjudicate its lien in Fidelity's foreclosure.

At the hearing on U.S. Bank's motion before the district court, U.S. Bank argued that there was no clear Kansas authority on the issue of whether a junior lienholder is required to appear and adjudicate its lien in a senior lienholder's foreclosure action to preserve a claim to surplus proceeds. Although it had not appeared in the foreclosure, U.S. Bank asserted that it had bid up the price on the property roughly $20,500 at the sale. Further, it argued it had priority in the surplus proceeds over RCE because RCE purchased only the Kings' right of redemption. It conceded that it no longer had any rights tied to the property, including a right to redeem, because it had not adjudicated its interest. However, it advanced cases from other jurisdictions and language from the Restatement (Third) of Property in support of the idea that its right to surplus proceeds survived its failure to appear and protect its interest in the foreclosure.

For its part, RCE agreed that proceeds from a sheriff's sale must be distributed to lienholders in order of priority before any excess goes to the debtor, but it argued that U.S. Bank's failure to appear or adjudicate its lien in the foreclosure meant it lost its right in the property and forfeited its status as a junior lienholder. Rather, U.S. Bank had become a mere unsecured creditor of the Kings and had no right to surplus proceeds from the foreclosure sale.

The district court denied U.S. Bank's motion, and the Court of Appeals affirmed the district court's decision, relying on instructive

Kansas cases and distinguishing the extrajurisdictional cases upon which U.S. Bank had relied below. The Court of Appeals also was unpersuaded by U.S. Bank's equity argument: the Kings' debt to U.S. Bank was not erased by the foreclosure, and U.S. Bank owns the property and can still enforce its note against the Kings personally. The Court of Appeals adopted RCE's position that

"a junior lienholder who has responded in a foreclosure action, and whose lien is adjudicated by the trial court, has three rights: (1) the right to offset bid its judgment at the sheriff's sale to protect the value of its lien; (2) the right to redeem the property from sale should the owner fail to redeem [during the owner's exclusive period]; and (3) the right to share in surplus proceeds after payment of the senior mortgage judgment." *Fidelity Bank v. King*, 33 Kan. App. 2d 804, 812, 109 P.3d 180 (2005).

According to the Court of Appeals, U.S. Bank's failure to participate in the foreclosure meant it possessed none of these rights. Instead it was merely the holder of an unsecured note. RCE, as holder of the Kings' right of redemption and right to excess proceeds, was therefore entitled to distribution of the $20,407.29 held by the court.

Our review in this appeal is unlimited, as it raises only questions of law. See *First Nat'l Bank & Tr. v. Miami Co. Co-op Ass'n*, 257 Kan. 989, 998, 897 P.2d 144 (1995).

The proceeds of a foreclosure sale are generally applied to costs and taxes and then to the judgment owed to the foreclosing party, as set forth in the district court's foreclosure decree. Although statutes govern procedures for foreclosure sales, there is no statute governing distribution of excess proceeds from such a sale. In this statutory vacuum, we look to the Restatement (Third) of Property: Mortgages § 7.4 (1996), which lays out the following guiding principles: "When the foreclosure sale price exceeds the amount of the mortgage obligation, the surplus is applied to liens and other interests terminated by the foreclosure in order of their priority and the remaining balance if any, is distributed to the holder of the equity of redemption." These principles are consistent with longstanding Kansas law. See *Blandin's Adm'r v. Wade*, 20 Kan. 251, 255 (1878); see also *McFall v. Ford*, 133 Kan. 593, 1 P.2d 273 (1931) (setting forth pithy formula leading to distribution of surplus

proceeds: "Foreclosure, sale, confirmation, debt satisfied, taxes and costs paid, surplus to debtor. This is the customary routine.").

Neither party to this appeal urges us to depart from these principles. The question here is whether U.S. Bank must have appeared in the Fidelity foreclosure and adjudicated its junior rights tied to the property to preserve its lienholder status and thus its priority entitlement to surplus proceeds. It insists that its participation in the foreclosure was not necessary. RCE insists that it was.

U.S. Bank's arguments are the following: (1) It is accepted practice in Kansas for a junior lienholder to protects its interest in surplus proceeds merely by bidding at a foreclosure sale; (2) the lower courts' holdings are ambiguous and rely upon faulty analysis; (3) as a policy matter, the Court of Appeals' decision will have a negative impact on Kansas citizens; and (4) the distribution of surplus proceeds in Kansas is governed purely by equity, which favors its position.

We can quickly dispose of U.S. Bank's second and third arguments. Our review of the holdings of the lower courts, as set forth above, is unlimited. In such expansive review, if any "fault" or "ambiguity" exists, it will be addressed and corrected. With regard to the third argument, we will not reach a decision in a case based on public policy when we have legal authority that guides us to appropriate resolution. See *Noel v. Menninger Foundation*, 175 Kan. 751, 267 P.2d 934 (1954). The courts will not pass on the propriety, wisdom, necessity, and expedience of existing law, otherwise constitutional, even if the court does not consider it to be in the public interest of the state. See *Cardarella v. City of Overland Park*, 228 Kan. 698, 700-01, 620 P.2d 1122 (1980).

U.S. Bank's first argument—that bidding by a junior lienholder, as opposed to participating in the foreclosure suit, is common practice and sufficient to preserve a priority right to surplus proceeds— assumes that surplus proceeds are not bound to an interest in the land subjected to sale. This necessary premise is incorrect.

U.S. Bank relies on *McFall*, 133 Kan. 593, for the proposition that proceeds from a foreclosure sale are cash separate from the land. On the contrary, *McFall* says:

"Since inferior judgment liens are cut off by the sale, *surplus takes the place of the land*, and the lienholders may apply for distribution of proceeds of sale . . . . [W]henever surplus, *standing for the land to which the lien attached*, ought in equity to be distributed to lienholders, it may be distributed to them, on application to the court having control of the surplus. This is the very purpose and object of reserving, in judgment and order of sale, power to dispose of surplus." (Emphasis added.) *McFall*, 133 Kan. at 601.

Because surplus proceeds remain tied to the land that is the subject of the foreclosure, those with preserved interests in the land are paid first. Under Kansas law, payment to lienholders in order of priority comes directly after payment of costs. Thereafter, any surplus belongs to the debtor in execution. See *Blandin's Adm'r*, 20 Kan. at 255. In this case, RCE has acquired the debtors' remaining interest in the land. This includes the debtor's right to surplus. Unless U.S. Bank is a lienholder, *i.e.*, a holder of an interest in the subject land, it does not, as a matter of law, come before RCE in the surplus proceeds payment queue.

The problem for U.S. Bank is that it did absolutely nothing to preserve and ensure its lienholder status when Fidelity's first mortgage was foreclosed. It ignored its chance to protect its priority for surplus proceeds. In Kansas, as the Court of Appeals stated, "a mortgage foreclosure merges all liens on the land." *Fidelity*, 33 Kan. App. 2d at 807. When the foreclosure decree was issued, it was silent on any continuing role or right for U.S. Bank. At that point, U.S. Bank was still the holder of a promissory note that could be sued upon, but the mortgage that had secured that note by providing it a lien on the land no longer had legal effect. Again, as our Court of Appeals noted correctly, the Kings' debt to U.S. Bank was thereafter unsecured. See *Fidelity*, 33 Kan. App. 2d at 806-10 (citing Restatement; drawing analogies to Kansas cases in which redemption rights are lost through failures to adjudicate junior liens in foreclosure proceedings).

U.S. Bank's fourth argument—that equity rather than law controls and commands a different result—also fails.

U.S. Bank relies on *Butler v. Craig*, 29 Kan. 205, a Kansas case from 1883, and an 1863 Illinois case cited in *McFall* for the proposition that a court has equitable power to distribute the proceeds

of a judicial sale "to the person [to] whom in law and equity [they] more properly belong[]." *Butler*, 29 Kan. at 207.

The issue in *Butler* was entitlement to surplus proceeds as between the original debtor and a third-party representative of the debtor who acquired the debtor's interest in the property. This court held that the third party was entitled to the surplus proceeds. *Butler*, 29 Kan. at 207. This case is too factually distinct to be influenced by *Butler*.

The Illinois case cited in *McFall*, *Ellis v. Southwell*, 29 Ill. 549 (1863), states that a court may distribute sales proceeds "on application, to an incumbrancer not made a party to the suit if it appeared that in equity, he was entitled to receive the fund." 29 Ill. at 552. But *Ellis*, when read carefully, is more helpful to RCE than to U.S. Bank.

Robert Southwell sought foreclosure of his mortgage on property owned by James Ellis, naming Weinhagen & Hornbostle, among others, as subsequent mortgagees and codefendants. Weinhagen & Hornbostle filed an answer and a "cross-bill," seeking foreclosure of their subsequent mortgage, which was attached with its underlying note to their cross-bill. Ellis filed no answer to the cross-bill, but it was never formally resolved by the court, either through proof or confession. Nevertheless, the court placed Weinhagen & Hornbostle behind Southwell but before all other creditors and the debtor when there were sale proceeds to distribute. *Ellis*, 29 Ill. 549. If U.S. Bank had made an effort to protect itself in the Fidelity foreclosure, it could persuade us that it is in the same position in this case as Wienhagen & Hornbostle was in *Ellis*. But U.S. Bank made no such effort.

U.S. Bank's purely equitable argument was made and rejected in *Pool v. Gates*, 119 Kan. 621, 240 Pac. 580 (1925), which, although not a foreclosure case, dealt with an analogous sheriff's levy and execution on land:

"Appellee argues that since . . . the court sits as a chancellor in confirming a judicial sale, with power to consider equitable as well as legal matters, he may also sit as a chancellor and direct the surplus proceeds of a sale to be paid to any one equitably entitled to it. The conclusion goes too far . . . [t]he Kansas cases [citations omitted], cited by appellee, do not go so far as to support his contention,

neither do the cases cited from other jurisdictions. [In all those cases], the payments by the junior mortgagee, upon prior liens, were alleged in the pleading and adjudicated in the decree foreclosing the junior mortgage. [Citations omitted]." 119 Kan. at 627.

To the extent equity should be *a* factor in the outcome rather than *the only* factor, it favors RCE rather than U.S. Bank. We agree with the Court of Appeals' assessment:

"U.S. Bank explains that junior mortgage holders often choose to protect their interest by bidding at the foreclosure sale in order to make sure the property brings a price sufficient to satisfy the junior lien in case the property is subsequently redeemed. Otherwise, the holder of the redemption right might be able to redeem for an amount exclusive of junior liens. U.S. Bank argues that if River City receives the surplus, U.S. Bank's debt remains unsatisfied, the Kings remain owing on the debt, and River City, a stranger to the original note and mortgage, gets away with the Kings' equity and U.S. Bank's additional funds it paid to protect itself at the sheriff's sale.

"U.S. Bank also argues that not allowing recovery of surplus proceeds by a foreclosed second mortgage holder over the holder of the equity of redemption will result in the chilling of bids at Kansas foreclosure sales and of lending to property owners for second mortgages. U.S. Bank asserts that if it is forced to appear in every foreclosure action, '[g]reat expense would be incurred by junior lienholders, who would, to avoid excessive legal expenses, be required to spend excessive time and money specifically finding the value of foreclosed real property, determining whether it is financially prudent to answer foreclosure petitions, and then considering bidding at a foreclosure sale.'

"We are not persuaded by U.S. Bank's claims of equity. First and foremost, U.S. Bank is the owner of the Kings' property by virtue of its high bid at the sheriff's sale and theoretically can recoup any amount paid through subsequent sale of the property. Second, U.S. Bank has an enforceable note for approximately $30,000 due from the Kings. U.S. Bank can reduce the note to judgment and pursue collections remedies against the Kings. In its reply brief, U.S. Bank argues that River City is awarded a windfall by receiving the surplus proceeds. How River City came into ownership of the Kings' property rights and for what purchase price is irrelevant for our determination. River City purchased all the incidents of ownership, including the right to redemption and the right to any surplus proceeds after payment of the foreclosed interest. The Kings apparently benefitted from the exchange.

"Third, we doubt our decision will have a chilling effect on bids at sheriff's sales and on the ability of individuals to obtain a second mortgage loan. The consequence we foresee will be an enforcement of the understanding that in order to protect a junior lien, a financial institution must appear in the foreclosure action brought by the senior mortgage holder, assert the junior lienholder's position,

have the court adjudicate the junior lien, and then make sure the junior lien is recognized in the journal entry of foreclosure." *Fidelity*, 33 Kan. App. 2d at 810-12.

To this discussion, we add only that today's holding furthers the simple and straightforward equitable principle that a party that chooses to sleep on its rights loses them. U.S. Bank took a long nap during Fidelity's foreclosure. This awakening may be rude, but it has the virtue of advancing future clarity and predictability in Kansas law governing surplus proceeds.

The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.